# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| **LOYD WOODWARD,**<br><br>    **Plaintiff,**<br><br>    *vs.*<br><br>**DAVID ALGIE and LINDA ALGIE,**<br><br>    **Defendants,**<br><br>**PARKER WOODWARD,**<br><br>    **Third-party defendant.** | **CAUSE NO.  1:13-cv-1435-DKL-RLY** |

### ENTRY

*Plaintiff's [Rules] 12([b])(6) and 9([b]) Motion To Dismiss Defendants' Amended Counterclaim with Prejudice* **[doc. 133]**

Plaintiff Loyd Woodward moves to dismiss all of Defendants' counterclaims against him. *Counter Complaint by David Algie and Linda Algie etc.* [doc. 122] ("*Counter Complaint*").[1] He seeks to dismiss the first, second, third, fourth, and sixth causes of action under Fed. R. Civ. P. 12(b)(6), for failure to state a claim. He seeks dismissal of the third cause of action also for failure to plead with particularity, as required under Fed. R. Civ. P. 9(b). Mr. Woodward filed his motion on May 15, 2015 and Defendants have not filed

---

[1] The first (promissory estoppel) and second (tortious interference) causes of action are against plaintiff Loyd Woodward alone. The third (fraud), fourth (intentional infliction of emotional distress), and sixth ("computer trespass") causes of action are against both Loyd Woodward and third-party defendant Parker Woodward, Loyd's son. The fifth cause of action ("civil theft constituting industrial espionage") is against only Parker Woodward.

1

a response.  Therefore, the motion is ready for decision, S.D. Ind. L.R. 7-1(c)(2), and is subject to summary ruling, L.R. 7-1(c)(4) ("The Court may summarily rule on a motion if an opposing party does not file a response within the deadline.").

> "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Camasta*, 761 F.3d at 736 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  When reviewing a dismissal for failure to state a claim, we accept all well-pleaded facts as true and view them in a light most favorable to the plaintiff; however, mere conclusory statements are insufficient to survive a motion to dismiss.  *Camasta*, 761 F.3d at 736.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

*Doe v. Village of Arlington Heights*, 782 F.3d 911, 914-15 (7th Cir. 2015).  *Snyder v. Smith*, 7 F.Supp.3d 842 (S.D. Ind. 2014); *Lineback v. Printpack, Inc.*, 979 F.Supp. 831 (S.D. Ind. 1997) (quoting *Chakonas v. City of Chicago*, 42 F.3d 1132, 1134 (7th Cir. 1994)).  On a motion to dismiss for a Rule 9(b) deficiency, a court also reads the complaint generously and draws all reasonable inferences in favor of the plaintiff.  *Siegel v. J & H Marsh & McLennon, Inc.*, 159 F.Supp.2d 1118, 1125 (N.D. Ill. 2001).

**First cause of action:  promissory estoppel.**  Defendants allege that Loyd Woodward repeatedly offered financial support to the LP1 project, first as a partner and, later, as an investor.  *Counter Complaint* ¶¶ 7 and 8.  Defendants allege that they were "eventually persuaded," by his enthusiasm for the project and his promise "to market the

unique LP1 on Algies' behalf," to accept his offer of financial support as an investor. They were "ultimately swayed by Woodward's promise to fly the LP1 to air shows all over the country and to handle all the promoting [marketing] for Algie." *Id.* ¶ 8 (original brackets). Defendants allege that they considered Woodward's funding offer "almost solely based on," his promise to fly the aircraft to shows, "which was huge exposure and promotion." *Id.*

In their first cause of action, for promissory estoppel, Defendants claim that they "relied on Woodward's promises which induced Algie into acceptance of Woodward's offer based on those promises." They "accepted Woodward's offer based solely on promised performance." Later, Woodward said that he would never fly the LP1 to air shows, and his refusal allegedly has caused Defendants injury. *Id.* ¶¶ 34 and 36. The *Counter Complaint* alleges that Defendants' acceptance of Mr. Woodward's offer of investment, in reasonable reliance on his promise to fly the aircraft to air shows, which promise was made with the expectation that Defendants would rely thereon and caused injury and injustice that can be avoided only by enforcing the promise, states the elements of a promissory estoppel action under Indiana law and entitles them to actual damages. *Id.* ¶¶ 33 and 36.

Plaintiff moves to dismiss Defendants' cause of action for promissory estoppel on one ground: "the existence of an express contract forecloses recovery under a theory implied in law" and Defendants admitted in their answer that "a valid contract exists." (*Plaintiff's* [*Rules*] *12([b])(6) and 9([b]) Motion To Dismiss* [doc. 133] ("*Motion*") at 2.)

3

Plaintiff is correct that, in Indiana law, recovery under the doctrine of promissory estoppel is available only when no valid express contract exists. *Zoeller v. East Chicago Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009); *Fiederlein v. Boutselis*, 952 N.E.2d 847, 857 (Ind. Ct. App. 2011) ("Both claims of promissory estoppel and unjust enrichment permit recovery where no express contract or contract in fact exists.").

Plaintiff cites Defendants' answer to ¶ 7 of his original complaint as their admission that a valid contract existed. That paragraph alleges:

> After there had been some dialogue between Woodward and David Algie, David Algie approached and solicited Woodward to assist with the development, production, marketing and sale of a kitplane that is identified as the "LP1". Initially, Woodward declined participation, and upon information and belief, David Algie solicited help, primarily financial help, from others, who also declined participation. Woodward and David Algie continued to dialogue though, and ultimately an agreement was reached which was memorialized into a Contract Agreement by Woodward (the "Contract Agreement"), and executed by all parties herein.

*Plaintiff Loyd Woodward's Original Complaint* [doc. 1] ("*Complaint*"), ¶ 7. Defendants answered:

> Defendants admits [*sic*] entering into a written contract with Plaintiff Woodward. All other allegation [*sic*], statements or suggestions in paragraph 7 are denied, being false or reversed.

*Answer* [doc. 77], ¶ 7.

On a literal basis, Defendants' answer does not admit that "a valid contract exists," as asserted by Plaintiff. First, the *Complaint* alleges only that the parties reached an "agreement" which was "memorialized" into the one-page document titled "Contract Agreement." It does not allege that the parties' agreement or the memorialization into

4

the "Contract Agreement" is a valid legal contract. Also, Defendants' answer only admits that Defendants executed a written contract with Plaintiff, as pled, not that that agreement, the "Contract Agreement," satisfies the legal criteria for validity and enforceability.

Second, liberally construing Defendants' *pro se* answer, as the Court must, *Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014), and considering their pleadings and filings as a whole, *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014); *Johnson v. Interstate Management Co., L.L.C.*, 962 F.Supp.2d 244, 250 (D.C. D.C. 2013), it is apparent that Defendants do not admit that the "Contract Agreement" is a valid contract. *See, e.g.*, *Counter Complaint*, ¶¶ 9 ("a very basic and somewhat vague contract agreement"), 11 ("It is to be noted that within the agreement, composed by Woodward, no provision, clause or stipulation for repayment or recoupment of the funding, marketing [promotion/advertising] expenses or any other expenses incurred by Woodward is stated. The agreement is silent on those issues.") (original brackets), and 12 ("However [Woodward's post-agreement proposal for profit or recoupment of his financing] was never reduced to a written agreement nor any other reimbursement, compensation or commission was ever discussed or reduced to writing. In fact now that Algie has had time and by necessity, to research contractual requirements, it would appear the requirement of 'consideration' for Woodward is missing. So the question arises, is this even an enforceable contract?"); *id.*, Exhibit A-5, "The Woodward Plan" [doc. 122-5] at 12 ("[Loyd Woodward's] contract with me did not have anything written that he could get

5

his money back . . . ."). The alleged absence of essential terms presents the issue of whether there was mutual assent or a meeting of the minds. *See DiMiZio v. Romo*, 765 N.E. 2d 1018, 1021-22 (Ind.Ct.App. 2001)("A Mutual assent or a meeting of the minds on all essential elements or terms must exist in order to form a binding contract.")

Because Plaintiff has not shown that Defendants fail to state a counterclaim for promissory estoppel, his motion to dismiss is denied.

**Second cause of action: tortious interference with contractual relationship.** Defendants allege that Plaintiff's aggressive, egregious, and unjustified behavior forced them to terminate the agreement that they had with him and, thus, he wrongfully and intentionally interfered with with Defendants' expectancy and reasonable probability of receiving continued financial support from him under their agreement, which has caused them financial injury, beyond the loss of their expected economic benefit under the agreement. *Counter Claim*, ¶¶ 37-43. Plaintiff argues that the claim should be dismissed for failure to state a claim because, first, the only relationship that they allege with which he interfered was their own relationship with him, which will not support such a claim, and, second, Defendants fail to allege illegal conduct by him. Therefore, Plaintiff argues that Defendants allege nothing more than a contract dispute.

Plaintiff is correct. "The elements of an action for tortious interference with a contract are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from

defendant's wrongful inducement of the breach." *Melton v. Ousley*, 925 N.E. 2d 430, 440 (Ind. Ct. App. 2010).

However, the action may not be used to sue another party to a contract for interfering with that same contract. "Although it is true that a party to a contract is not subject to liability for tortious interference with its own contract if it acts alone, it may be subject to liability for conspiring with another party to tortiously interfere with the contract." *Winkler v. V. G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 n. 7 (Ind. 1994) (citation omitted); *Allison v. Union Hospital, Inc.*, 883 N.E.2d 113, 118-19 (Ind. Ct. App. 2008) (citing *Winkler*). Such use would constitute making a tort of a contract breach:

> [A] party may not restyle a breach-of-contract claim as a tort claim simply to obtain additional damages. Where the source of a party's duty to another arises from a contract, "tort law should not interfere." "[T]he question is not whether [the plaintiffs] have, as we assume adequately pled their tort claims, but, rather, whether [the defendant] is alleged to have done anything that constituted an independent tort if there were no contract."

*JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012) (citations omitted). *Comfax Corp. v. Am Van Lines, Inc.*, 587 N.E.2d 118, 124 (Ind. Ct. App. 1992) ("Indiana does not recognize a claim for tortious breach of contract."). In addition, "Indiana law does not impose a generalized duty of good faith and fair dealing on every contract; the recognition of an implied covenant is generally limited to employment contracts and insurance contracts." *Old National Bank v. Kelly*, 31 N.E.3d 522, 531 (Ind. Ct. App. 2015).

Defendants' tortious-interference claim alleges that Plaintiff's progressively bizarre and aggressive behavior toward David Algie, beginning in or after Spring 2012, *Cross Complaint*, ¶¶ 20, 23, finally induced Mr. Algie to terminate their agreement in October 2012, by refusing continued financial support from Plaintiff, *id.,* ¶ 21. The *Cross Complaint* does not allege that Plaintiff conspired with any other person to cause Mr. Algie's decision to refuse further financial support and the cause of action is specifically asserted against only Plaintiff, not third-party defendant Parker Woodward. Although Defendants assert claims against Parker Woodward and allege that he obtained and tampered with information on Defendants' computers and possibly stole Defendants' physical 2010 tax file, *id.*, ¶¶ 23-25, they allege that Parker's conduct occurred from about August 2010 through July 2011, before Plaintiff's bizarre and aggressive conduct began in or after the Spring of 2012 and before David Algie discovered the missing tax file and the tampered computer information in the Spring of 2013. Defendants' tortious-interference claim does not cite any interfering conduct by Parker and, again, is not asserted against him.

Defendants' tortious-interference claim fails to state a claim and is dismissed.

**Third cause of action: fraud.** Plaintiff moves to dismiss this cause of action for failure to state a claim and for failure to plead it with particularity. Substantively, Plaintiff argues that, while the allegations are unclear, "it appears that all of the [fraudulent] statements identified by Defendants relate to Plaintiff's alleged promises of future performance," which are not actionable as fraud in Indiana. *Motion*, at 3. Procedurally,

8

Plaintiff argues that Defendants' cause of action for fraud is not pled with particularity as required by Fed. R. Civ. P. 9(b).

The fraud claim is asserted against both Loyd and Parker Woodward and states that they **(1)** "conspired to defraud Algie out of his creation, the LP1 through a pattern of deceptive actions, executed with malicious and deliberate intent from inception of the agreement to date," and **(2)** "Algie relied on Woodwards's statements believing them to be truthful, thereby entering into an agreement, unaware of Woodward's deceit and actual intent." *Counter Complaint*, ¶¶ 45 and 47. Plaintiff is correct that "[f]raud may not be based upon representations regarding future conduct, or upon broken promises, unfulfilled predictions or statements of existing intent which are not executed." *Corry v. Jahn*, 972 N.E.2d 907, 919 (Ind. Ct. App. 2012), *trans. denied*, but, because Defendants did not plead the particulars of the Woodwards's alleged fraudulent statements, the Court cannot determine whether this cause of action states a claim. While the earlier factual allegations in the *Counter Complaint* contains factual allegations that could constitute promises of future performance by Plaintiff, the statement of the third cause of action alleges only the conclusion that the Woodwards engaged in a "pattern of deceptive actions." The Court cannot determine on which statements and/or conduct by Plaintiff Defendant rely for their fraud claim and it will not undertake to examine all possible allegations.

The *Counterclaim*'s fourth cause of action for fraud is dismissed for failure to plead with particularity. Defendants are afforded an opportunity to file an amended

9

counterclaim that pleads the fraud count with particularity. See *Henderson v. Sheahan*, 196 F. 3d 839, 845-46 (7th Cir. 1999); *Pressalite Corp. v. Matsushita Electric Corp. of America*, No. 02-C-7086, 2003 U.S. Dist. LEXIS 5600, 2003 WL 1811530, *9 (N.D. Ill., Apr. 4, 2003).

**Fourth cause of action: intentional infliction of emotional distress.**

> In Indiana, a defendant is liable for the intentional infliction of emotional distress if he or she "(1) engages in extreme and outrageous conduct; (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Brown v. Indianapolis Hous. Agency,* 971 N.E.2d 181, 188 (Ind. Ct. App. 2012) (citing *Bradley v. Hall,* 720 N.E.2d 747, 752 (Ind. Ct. App. 1999)). In defining the type of "extreme and outrageous" conduct necessary to give rise to liability, Indiana courts have turned for guidance to commentary in the Second Restatement of Torts:
>
>> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> Restatement (Second) of Torts § 46; *see also Bradley,* 720 N.E.2d at 752–753; *Lachenman v. Stice,* 838 N.E.2d 451, 456–457 (Ind.Ct.App. 2005). The law thus imposes a "rigorous" standard of liability for the tort of IIED, *see Curry v. Whitaker,* 943 N.E.2d 354, 361 (Ind.Ct.App. 2011), and under certain circumstances the existence or absence of actionable conduct by the defendant can be decided as a matter of law. *See Creel v. I.C.E. & Assocs., Inc.,* 771 N.E.2d 1276, 1282 (Ind.Ct.App. 2002).

*Snyder v. Smith*, 7 F.Supp.3d 842, 872-73 (S.D. Ind. 2014). The only conduct of Plaintiff which Defendants allege inflicted emotional distress upon them is his filing the instant

10

lawsuit (supported by "perjured declarations") and his ultimately abandoned *ex parte* motions for pre-judgment attachment of the LP1 material and equipment. Defendants contend that this breach-of-contract suit is frivolous — because Plaintiff knew that Mr. Algie had fulfilled his obligation under the "Contract Agreement" on which Plaintiff sues, no reimbursement term is included in the "Contract Agreement," and his claimed expenses that he wants reimbursed are egregiously false — and he filed it and his *ex parte* attachment motions with the intent "to cause as much emotional and financial damage as is possible" and "to prevent Algie from completing the LP1 . . .". *Counter Complaint*, ¶¶ 52-54. Defendants assert that these acts are outrageous and that they "now live in constant fear of what devious act Woodward may try next, hence the emotional trauma continues." *Id.*, ¶ 56.

Plaintiff argues that Defendants' cause of action for intentional infliction of emotional distress should be dismissed because filing a suit for breach of contract and pursuing *ex parte* pre-judgment remedies do not rise to the level of extreme and outrageous conduct or "atrocious and utterly intolerable behavior in a civilized society." He argues that, in fact, litigation is the proper and civilized means of resolving legal disputes and the *ex parte* pre-judgment attachment proceedings he pursued are specifically authorized by state and federal law. In the absence of any response by Defendants, the Court agrees with Plaintiff that knowingly filing an unfounded lawsuit, filing a suit for improper purposes, or seeking *ex parte* pre-judgment attachment for improper purposes do not, by themselves, rise to the extreme level of outrageousness that

11

is required.  Such misconduct might support other causes of action,[2] but not one for intentional infliction of emotional distress.

This cause of action is dismissed for failure to state a claim.

**Sixth cause of action:  computer trespass.**  This claim is against both Loyd and Parker Woodward and alleges that they worked in concert to access Defendants' computers in order to retrieve and delete data "solely for the purpose of concealing incriminating evidence."  *Counter Complaint*, ¶ 64.  Defendants allege that, in the Spring of 2013, after Plaintiff commenced this suit (in January, 2013), Mr. Algie discovered that his e-mails with Loyd Woodward from 2008 forward had been deleted, both on his computer at the shop and the one at his residence.  Defendants allege that Parker was "exceptionally computer literate," had motive, and had access to the shop computer during his work at Mr. Algie's shop from August 2010 through July 2011 in order to delete the e-mails, and that he possibly introduced an e-mail worm on Mr. Algie's home computer to gain access to it to delete e-mails stored there.  *Id.*, ¶¶ 23, 25.  They allege

---

[2] See, *e.g.*, *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 249-50 (Ind.Ct.App. 2013), *trans. denied*, 2 N.E.3d 686 (Ind. 2014):

> The elements of malicious prosecution are:  (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor.  *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind.Ct.App.2005), *trans. denied*.  An abuse of process claim requires a showing that a defendant had: (1) an ulterior purpose or motives; and (2) a willful act in the use of process not proper in the regular conduct of a proceeding.  *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind.Ct.App.2005), *trans. denied*.

(Footnote omitted.)

that the purpose for Loyd having Parker work at the shop was to gain access to the Algies' 2010 tax folder and the incriminating e-mails with Loyd. *Id.*, ¶ 25.

Plaintiff argues that this claim should be dismissed because, in Indiana, a trespass action requires the plaintiff to prove that he was in possession of the subject land and the alleged trespasser entered the land without right, but, in this case, computers are not land and Defendants do not allege that Plaintiff was in possession of the computers. Although Defendants did not respond to Plaintiff's motion, it is clear that Defendants are not complaining of a trespass to land, but of unauthorized accessing and tampering with their computers. While not termed "computer trespass" *per se*, the conduct does appear to be actionable in Indiana law. *See, e.g., Coleman v. Vukovich*, 825 N.E.2d 397, 406-07 (Ind.Ct.App. 2005) (unauthorized access to computers actionable as conversion and trespass to chattel).

Plaintiff's motion to dismiss Defendants' sixth cause of action is denied.

## Conclusion

*Plaintiff's [Rules] 12([b])(6) and (9)([b]) Motion to Dismiss Defendants' Amended Counterclaim with Prejudice* [doc. 133] is **GRANTED in part and DENIED in part**. It is **granted** with respect to the claims denominated in the *Counter Complaint* [doc. 122] as the second (tortious interference), third (fraud), and fourth (intentional infliction of emotional distress) causes of action, and it is **denied** with respect to the first (promissory estoppel) and sixth (computer trespass) causes of action. Defendants may move for leave to file an

amended counter complaint that corrects the deficiencies found herein **no later than Monday, August 10, 2015**.

**SO ORDERED this date:** 07/27/2015

*[signature]*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.

Distributed *via* first-class mail to:
    David Algie, 6407 West 62nd Street, Indianapolis, Indiana, 46278.
    Linda Algie, 6407 West 62nd Street, Indianapolis, Indiana, 46278.